1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   VICTOR FIERROS,                    )   Case No. CV 13-3839-SP
                                        )
12                 Plaintiff,           )   MEMORANDUM OPINION AND
                                        )   ORDER
13            v.                        )
                                        )
14                                      )
     CAROLYN W. COLVIN, Acting          )
15   Commissioner of Social Security    )
     Administration,                    )
16                                      )
                   Defendant.           )
17   _____)

18

19                                  **I.**

20                            **INTRODUCTION**

21          On June 5, 2013, plaintiff Victor Fierros filed a complaint against

22   defendant, the Commissioner of the Social Security Administration

23   ("Commissioner"), seeking review of a denial of Disability Insurance Benefits

24   ("DIB") and Supplemental Security Income ("SSI").  Both plaintiff and defendant

25   have consented to proceed for all purposes before the assigned Magistrate Judge

26   pursuant to 28 U.S.C. § 636(c).

27          Plaintiff presents four disputed issues for decision: (1) whether the ALJ

28

                                      1

properly determined that plaintiff did not have a severe impairment under step two; (2) whether the ALJ failed to give the appropriate weight to the opinion of plaintiff's treating physician, Dr. Khashayar, and thus erred at step three; (3) whether the ALJ erred in discrediting the lay witness statements of plaintiff's sister; and (4) whether the ALJ properly determined plaintiff's residual functional capacity ("RFC").

Having carefully studied, inter alia, the parties' written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, there is substantial evidence in the record, taken as whole, to support the ALJ's decision. First, the ALJ's failure to find plaintiff has a severe combination of mental impairments was harmless error. Second, the ALJ properly gave minimal weight to Dr. Khashayar's opinion. Third, the ALJ properly rejected the lay witness testimony of plaintiff's sister. And fourth, the ALJ's RFC assessment and step five determination properly accounted for plaintiff's mental impairments. Therefore, the court affirms the Commissioner's decision denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was twenty-two years old on his alleged disability onset date, is a high school graduate and has completed some college courses.[1] AR at 38, 39, 263, 267, 288. He has past work experience as a pet groomer, theater custodian, and clerk. *Id.* at 289, 295. But because his earned income never exceed $3,800 in any year, the work does constitute substantial gainful activity. *Id.* at 20; 20 C.F.R. 404.1571

---

[1]   At the time of his November 6, 2012 administrative hearing, plaintiff was enrolled two college courses. AR at 38-40; *see also id.* at 640. It is unclear from the record whether plaintiff currently remains enrolled in college courses.

On January 14, 2009, plaintiff applied for DIB and SSI, alleging an onset date of September 1, 2004, due to a right hand injury and anxiety. AR at 263-69, 288. The Commissioner denied plaintiff's application initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 125-45.

On April 12, 2010, plaintiff, unrepresented by counsel, appeared and testified at a hearing before the ALJ. AR at 72-103. A vocational expert and plaintiff's mother also testified. *Id.* at 74, 96-103. The ALJ found that plaintiff had a severe right hand impairment but not a severe mental impairment and could perform work that did not involve more than frequent fine and gross manipulation with the right upper extremity. *Id.* at 111-18. Accordingly, the ALJ denied benefits on June 25, 2010. *Id.* at 118.

Plaintiff requested administrative review of the June 25, 2010 denial, and on June 20, 2011 the Appeals Council ("AC") granted his request and remanded his claim for a new administrative hearing and decision. *Id.* at 123-24. The AC instructed that, upon remand, the ALJ must: obtain additional evidence concerning plaintiff's impairments in order to complete the AR in accordance with regulatory standards regarding consultative examinations and existing medical evidence; further evaluate plaintiff's mental impairment in accordance with 20 C.F.R. §§ 404.1520a and 416.920a; further consider plaintiff's maximum RFC during the entire period at issue, and provide the rationale with specific reference to the evidence of record in support of assessed limitations; and if warranted, obtain evidence from a vocational expert. *Id.*

On remand, plaintiff had three hearings. During the first two hearings, no testimony was heard and the ALJ re-scheduled the hearing. *Id.* at 63-71. At his final hearing on November 6, 2012, held before a new ALJ, plaintiff, represented by counsel, testified, as did a vocational expert. *Id.* at 36-61. On November 30, 2012, the ALJ denied plaintiff's claims for benefits. *Id.* at 17-27.

3

Applying the five-step sequential evaluation process, the ALJ found, at step one, that the plaintiff has not engaged in substantial gainful activity since September 1, 2004. *Id.* at 20.

At step two, the ALJ found that plaintiff has the following severe combination of impairments: history of right hand laceration and open fracture, status post open reduction of right ring finger dislocation, close of the laceration of the volar surface of the right ring finger, and application of volar splint; post traumatic stress syndrom; major depressive disorder; and panic disorder with agoraphobia. *Id.* But the ALJ concluded that these mental impairments, considered singly and in combination, do not cause more than minimal limitation and are therefore non-severe. *Id.* at 20-21.

The ALJ found, at step three, that plaintiff's impairment does not meet or medically equal one of the listed impairments set forth in the Listings. *Id.* at 21–22.

The ALJ then assessed plaintiff's RFC,[2] and determined that plaintiff retains the RFC to perform "medium" work with the following limitations: "he can frequently climb ladders, ropes, scaffolds, ramps and stairs; balance; stoop; kneel; crouch; and crawl. He can frequently handle and finger with the right upper extremity. In addition, he is limited to simple, routine, repetitive work that does not involve directing others or abstract through and planning, that involves only simple work-related decisions and routine workplaces changes, and that is performed under occasional supervision with no direct interaction with the public,

---

[2]   Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

4

1    only occasional interaction with co-works, and no tandem tasks." *Id.* at 22.

2        At step four, the ALJ found that plaintiff has no past relevant work. *Id.* at

3    25.

4        Finally, at step five, the ALJ concluded that there are jobs that exist in

5    significant numbers in the national economy that plaintiff can perform, including

6    rack loader, night cleaner, and machine feeder. *Id.* at 25-26.  Consequently, the

7    ALJ concluded that plaintiff does not suffer from a disability as defined by the

8    Social Security Act. *Id.* at 26.

9        Plaintiff filed a timely request for review of the ALJ's decision (*id.* at 6-12),

10   which was denied by the AC. *Id.* at 1-3.  The ALJ's decision stands as the final

11   decision of the Commissioner.

12                                    **III.**

13                          **STANDARD OF REVIEW**

14       This court is empowered to review decisions by the Commissioner to deny

15   benefits.  42 U.S.C. § 405(g).  The findings and decision of the Commissioner

16   must be upheld if they are free of legal error and supported by substantial

17   evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as

18   amended).  But if the court determines that the ALJ's findings are based on legal

19   error or are not supported by substantial evidence in the record, the court may

20   reject the findings and set aside the decision to deny benefits. *Aukland v.*

21   *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

22   1144, 1147 (9th Cir. 2001).

23       "Substantial evidence is more than a mere scintilla, but less than a

24   preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

25   "relevant evidence which a reasonable person might accept as adequate to support

26   a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

27   F.3d at 459.  To determine whether substantial evidence supports the ALJ's

28

1  finding, the reviewing court must review the administrative record as a whole,

2  "weighing both the evidence that supports and the evidence that detracts from the

3  [AC's] conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

4  affirmed simply by isolating a specific quantum of supporting evidence.'"

5  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

6  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

7  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

8  of the ALJ.'"  *Id.*  (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

9  1992)).

10                                        **IV.**

11                                  <u>**DISCUSSION**</u>

12  **A.      The ALJ Committed Harmless Error at Step Two**

13          Plaintiff argues that the ALJ erred when he did not find that plaintiff's

14  mental impairment is severe at step two.  Pl. Mem. at 3-6.  Specifically, plaintiff

15  asserts that the ALJ's finding that plaintiff has a "severe" combination of

16  impairments is irreconcilable with his ultimate conclusion that "claimant's

17  medically determinable mental impairments, considered singly and in

18  combination, do not cause more than minimal limitation in the claimant's ability to

19  perform basic mental work activities and are therefore non-severe."  Pl. Mem. at 4

20  (citing AR at 20).  Plaintiff relies on the opinions of his treating physician, Dr.

21  Khashayar, and his examining physician, Dr. Gamboa, as evidence that his mental

22  impairment is in fact severe at step two.  *Id.* at 4-6.  Defendant concedes that the

23  ALJ erred in finding plaintiff's mental impairment to be non-severe, but contends

24  that this error was at most a harmless error.  D. Mem. at 3-4.  The court agrees.

25          The inquiry at step two is whether or not a claimant is suffering from a

26  severe impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The step

27  two inquiry is defined as "'a de minimis screening device to dispose of groundless

28

                                          6

claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).  "At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen*, 80 F.3d at 1289-90.  "Important here, at the step two inquiry, is the requirement that the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Id.* at 1290.  The ALJ is also "required to consider the claimant's subjective symptoms . . . in determining severity." *Id.*

"An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work."[3]  *Smolen*, 80 F.3d at 1290 (internal quotation marks and citation omitted).  "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28).[4]  "[A]pplying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find

---

[3]  "'Basic work activities' are defined as including such capabilities as use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." *Edlund*, 253 F.3d at 1159 (internal citations omitted).

[4]  "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies.  SSRs are binding on all components of the SSA.  SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Id.*  In addition, "'if an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Id.* (quoting SSR 85-28) (brackets omitted).

Here, the ALJ found that plaintiff has a "severe combination of impairments," including, among other things: impairments to his right hand, post traumatic stress syndrome, major depressive disorder, and panic disorder with agoraphobia.  AR at 20.  According to the ALJ, this "combination of impairments causes more than minimal functional limitations and is therefore severe." *Id.*  But after analyzing the functional areas known as the "paragraph B" criteria, the ALJ went on to state that plaintiff's "mental impairments, considered singly and in combination, do not cause more than minimal limitation in the [his] ability to perform basic mental work activities and are therefore *non-severe*." *Id.* (emphasis added).

Defendant contends that the ALJ's "single statement that these impairments were 'non-severe' was a drafting error."  D. Mem. at 4.  This does not appear to the court to be the case, as at two separate points in the ALJ's analysis he concludes that plaintiff's mental impairments are non-severe. *See id.* at 20-21. Nevertheless, any error at step two is harmless.[5]

Although the ALJ found plaintiff's mental impairments were not, even in combination, a severe impairment, he did find that plaintiff suffered from a severe impairment when plaintiff's physical and mental impairments were considered in

---

[5]    The court applies the "harmless-error" rule, ordinarily applied to civil cases, to social security cases. *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011). Under this rule, the burden is on plaintiff to show prejudice resulted from the error. *Id.*

1   combination.  The ALJ therefore determined step two in plaintiff's favor and

2   continued with the five-step analysis.  As such, any error by the ALJ in

3   determining precisely which components of plaintiff's impairment are severe was

4   harmless.  *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error by

5   ALJ at step two was harmless because the step was resolved in plaintiff's favor).

6        Had the ALJ not considered plaintiff's mental impairments in assessing his

7   RFC, the error would not have been harmless.  *See* SSR 96-8p ("In assessing RFC,

8   the adjudicator must consider limitations and restrictions imposed by all of an

9   individual's impairments, even those that are not 'severe.'" ).  But as discussed

10   more fully in section IV.E below, the ALJ's finding that plaintiff's mental

11   impairment was non-severe did not affect plaintiff's RFC.  Instead, the ALJ went

12   on to determine plaintiff's RFC to include limitations caused by his mental

13   impairments.  *See* AR at 22-25.  Accordingly, although the ALJ erred by stating

14   that plaintiff did not have a severe mental impairment, the ALJ's error was

15   harmless.

16   **B.**   **The ALJ Properly Gave Little Weight to the Opinion of Plaintiff's**

17       **Treating Physician**

18        Plaintiff argues that the ALJ failed to accord sufficient weight to the opinion

19   of his treating physician, Dr. Shahin Khashayar.  P. Mem. at 6-10.  Specifically,

20   plaintiff contends that the ALJ's reasons for giving "little weight" to Dr.

21   Khashayar's opinion were not legitimate and were not supported by substantial

22   evidence.  *Id.* at 9.  The court disagrees.

23        In determining whether a claimant has a medically determinable

24   impairment, among the evidence the ALJ considers is medical evidence.  20

25   C.F.R. § 404.1527(b).  In evaluating medical opinions, the regulations distinguish

26   among three types of physicians: (1) treating physicians; (2) examining

27   physicians; and (3) non-examining physicians.  20 C.F.R. § 404.1527(c), (e);

28

1    *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "Generally, a treating

2    physician's opinion carries more weight than an examining physician's, and an

3    examining physician's opinion carries more weight than a reviewing physician's."

4    *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R.

5    § 404.1527(c)(1)-(2).  The opinion of the treating physician is generally given the

6    greatest weight because the treating physician is employed to cure and has a

7    greater opportunity to understand and observe a claimant.  *Smolen v. Chater*, 80

8    F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th

9    Cir. 1989).

10          Nevertheless, the ALJ is not bound by the opinion of the treating physician.

11   *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the

12   ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*,

13   81 F.3d at 830.  If the treating physician's opinion is contradicted by other

14   opinions, the ALJ must provide specific and legitimate reasons supported by

15   substantial evidence for rejecting it.  *Id.* at 830.  Likewise, the ALJ must provide

16   specific and legitimate reasons supported by substantial evidence in rejecting the

17   contradicted opinions of examining physicians.  *Id.* at 830-31.  The opinion of a

18   non-examining physician, standing alone, cannot constitute substantial evidence.

19   *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v.*

20   *Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d

21   813, 818 n.7 (9th Cir. 1993).

22          Dr. Khashayar, a psychiatrist, treated plaintiff from June 1, 2010 through

23   March 21, 2012.  AR at 650.  Dr. Khashayar began treating plaintiff when plaintiff

24   visited the Arcadia Mental Health Center walk-in clinic complaining of panic

25   attacks and depression.  *Id.* at 637-38.  On April 17, 2012, Dr. Khayashar

26   completed a Mental Disorders Questionnaire Form.  *Id.* at 644-50.  In the

27   questionnaire, Dr. Khashayar diagnosed plaintiff with panic disorder with

28

1    agoraphobia, generalized anxiety disorder, and major depressive disorder. *Id.* at

2    649. Dr. Khashayar opined that plaintiff: (1) would be unable to work a normal

3    workday or workweek without interruptions; (2) would have difficulty completing

4    tasks within a schedule and maintaining regular attendance; (3) would require

5    special supervision in order to sustain a work-related routine; (4) would have

6    difficulty maintaining concentration, remembering and carrying out instructions,

7    and maintaining a persistent work pace; (5) would be vulnerable to

8    decompensation due to impaired coping skills; and (6) would be impaired in his

9    ability to interact appropriately with others. *Id.* at 648-49.

10         The ALJ gave "little weight" to Dr. Khashayar's opinion in the

11    questionnaire on the grounds that: (1) Dr. Khashayar's notes do not contain

12    substantial clinical evidence that would support the severe limitations opined; (2)

13    Dr. Khashayar did not explain how the clinical findings relate to the restrictions

14    imposed; (3) Dr. Khashayar saw plaintiff at most once per month; (4) there was

15    evidence of plaintiff's non-compliance with treatment, which was not discussed in

16    Dr. Khashayar's questionnaire, thus casting doubt on his overall conclusions; and

17    (5) the record indicates that on some occasions plaintiff had no significant

18    complaints. *Id.* at 24.

19         The first reason the ALJ provided as a basis for giving little weight to Dr.

20    Khashayar's opinion was that his medical notes do not support the severe

21    limitations suggested in his report. AR at 24. This, the ALJ found, is in part

22    demonstrated by the fact that Dr. Khashayar did not seek to hospitalize plaintiff

23    despite the severity of his evaluation. *Id.* That Dr. Khashayar apparently never

24    sought to voluntarily hospitalize plaintiff is a relevant, although far from

25    determinative, consideration. But to the extent the ALJ is referring to Dr.

26    Khashayar's repeated findings of "no 5150 issues," such findings were not

27    inconsistent with Dr. Khashayar's opinion in the questionnaire. A § 5150 hold is

28

reserved for instances when the patient "cannot be properly served without being detained" because he or she is "a danger to others, or to himself or herself, or gravely disabled." Cal. Welf. & Inst. Code § 5150. Dr. Khashayar found this was not the case with plaintiff and instead discussed safety issues with plaintiff and instructed him to call 911 if he felt suicidal. *See* AR at 613-19, 623-28, 631, 635. Thus, lack of hospitalization was not by itself a sufficient reason for rejecting Dr. Khashayar's opinion.

Nevertheless, there is substantial evidence to support the ALJ's finding that Dr. Khashayar's treatment notes do not otherwise support the severe limitations included in his questionnaire. In his questionnaire, Dr. Khashayar states that plaintiff "has shown inconsistent improvement with treatment" and "appears to have experienced a significant deterioration in overall functioning since the onset of his mental condition." *Id.* at 645, 647. But Dr. Khashayar's treatment notes indicate that from approximately December 2010 through September 2011 plaintiff's symptoms improved. *See id.* at 615-19, 623-27. On multiple occasions plaintiff indicated that he felt better (*id.* at 615, 617-19, 627), had less anxiety (*id.* at 615, 618, 623-24, 626-27), and felt less depressed. *Id.* at 623-24, 626-28. His panic attacks decreased from four to five times per month (*id.* at 628) to once per month (*see id.* at 615), or once every two to three weeks. *Id.* at 615-16. During this time period, plaintiff's adherence to his medication was noted as "fair." *Id.* at 615-19, 623, 625-28.

Thus, the statements in Dr. Khashayar's questionnaire regarding plaintiff's mental condition appear to refer to plaintiff's most recent appointments on February 22, 2012 and March 21, 2012, when plaintiff's condition deteriorated. *See* AR at 613-14. For example, Dr. Khashayar indicated that plaintiff "continued to have almost daily panic attacks . . . and paranoia." *Id.* But in his treatment notes, Dr. Khashayar indicated that plaintiff had paranoid ideations on only one

occasion: March 21, 2012. *Id.* at 613.  Additionally, at his last two appointments, plaintiff's adherence to medication was noted as "poor," as he was taking less than the prescribed dosage. *Id.*  Accordingly, there is substantial evidence to support the ALJ's conclusion that Dr. Khashayar's treatment notes do not support the severe limitations opined in his questionnaire.

The second reason cited by the ALJ – that Dr. Khashayar did not explain how his clinical findings related to the restrictions he imposed – appears to simply reiterate the ALJ's second reason for discrediting Dr. Khashayar – that Dr. Khashayar's treatment notes do not support the severe limitations included in his questionnaire, discussed above.  Plaintiff does not challenge this reason and the court finds it unnecessary to address in light of the substantial evidence that exists to support the ALJ's rejection of Dr. Khashayar's opinion.

The ALJ also gave minimal weight to Dr. Khahsayar's opinion on the basis that he only saw plaintiff "at most once per month." AR at 24.  This reason is not supported by substantial evidence.  Dr. Khashayar noted that he met with plaintiff one to two times per month or as needed. *Id.* at 650.  Thus, to the extent the ALJ discredited Dr. Khashayar's opinion because the infrequency of plaintiff's appointments suggest his condition was not severe, the ALJ's misstatement of how often plaintiff was seen by Dr. Khashayar undercuts the ALJ's analysis.

In addition, the ALJ gave minimal weight to Dr. Khashayar's opinion on the basis that he failed to mention instances of plaintiff's non-compliance in his report, which "casts doubt on his overall conclusions." AR at 24.  As discussed above, plaintiff's symptoms seemed to steadily improve, with infrequent recurrence, from September 2010 through December 2011 when plaintiff was taking his medication as prescribed.[6]  The decline in plaintiff's mental condition,

---

[6]  On October 7, 2010, plaintiff noted that he had two "mild" panic attacks. AR at 617.  On January 5, 2011, plaintiff indicated that he temporarily felt

1  noted at his last two appointments, corresponds with Dr. Khashayar's treatment

2  notes that plaintiff had "poor" adherence to his medication.  *Id*. at 613-14.  Dr.

3  Khashayar does not mention this in his report and does not discuss the extended

4  period of improvement during plaintiff's "fair" adherence to his medication.

5  Instead, Dr. Khashayar's questionnaire appears to focus on plaintiff's most recent

6  mental state, which, in light of the longitudinal treatment history, does not give a

7  full and accurate picture of plaintiff's mental impairments.  Accordingly,

8  substantial evidence supports this ground for giving little weight to Dr.

9  Khashayar's opinion.

10      Finally, the ALJ gave minimal weight to Dr. Khashayar's opinion on the

11  ground that the medical records indicate instances when plaintiff had no

12  significant complaints.  Plaintiff is correct to note that physicians invariably rely

13  on a patient's subjective descriptions of his or her condition, and that this, without

14  more, does not undermine the opinion of a physician.  *See* Pl. Mem. at 9 (citing

15  *Rodriguez v. Bowen*, 846 F.2d 759, 762 (9th Cir. 1989)).  But plaintiff's argument

16  misses the point.  The issue is not that Dr. Khashayar relied on plaintiff's

17  subjective descriptions of his condition, but that these subjective descriptions and

18  Dr. Khashayar's corresponding treatment notes paint a vastly different picture of

19  plaintiff's mental impairments than Dr. Khashayar's final questionnaire.  Again, as

20  discussed above, Dr. Khashayar's questionnaire is inconsistent with his treatment

21  notes, which, on multiple occasions, indicate that plaintiff felt better.  *See* AR at

22  615-19, 623-27.

23      On balance, substantial evidence supports the ALJ's findings.  The ALJ

24  properly found that the inconsistencies between Dr. Khashayar's treatment notes

25

26  _____

27  depressed and suicidal after a fight with his mother, but he noted that this feeling
   quickly passed and denied having felt depressed or suicidal since that episode.  *Id.*

28  at 625.

14

1    and questionnaire undermine his opinion and accordingly gave Dr. Khashayar's

2    opinion little weight.

3    **C.    The ALJ Properly Found That Plaintiff's Condition Does Not Meet**

4    **or Equal Listing 12.04 and 12.06**

5         Plaintiff claims that the ALJ incorrectly found that his mental impairment

6    does not meet or equal Listing 12.04 (Affective Disorder) and 12.06 (Anxiety-

7    Related Disorders).  Pl. Mem. at 6.  Specifically, plaintiff contends that his treating

8    physician, Dr. Khashayar, determined that plaintiff's condition met these listings

9    and the ALJ failed to properly give Dr. Khashayar's opinion the appropriate

10   weight. *Id.* at 6-10.

11        At step three, Social Security regulations provide that a claimant is disabled

12   if he or she meets or medically equals a listed impairment set forth in the Listings.

13   20 C.F.R. §§ 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or

14   equals one of our listings . . . we will find that you are disabled"), 416.920(d) ("If

15   you have an impairment(s) which . . . is listed in Appendix 1 or is equal to a listed

16   impairment(s), we will find you disabled without considering your age, education,

17   and work experience").  In other words, if a claimant meets or equals a Listing, he

18   or she will be found disabled at this step "without further inquiry." *Tackett v.*

19   *Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  In such case, there is no need for the

20   ALJ to complete steps four and five of the sequential process. *Lewis v. Apfel*, 236

21   F.3d 503, 512 (9th Cir. 2001).  "To *meet* a listed impairment, a claimant must

22   establish that he or she meets each characteristic of a listed impairment relevant to

23   his or her claim." *Tackett*, 180 F.3d at 1099 (emphasis in original).

24        Here at step three, the ALJ concluded that "there is no opinion or other

25   evidence that the claimant's impairments meet or equal a listing." AR at 21.  But

26   as plaintiff notes, Dr. Khashayar specifically opined in his April 17, 2012

27   questionnaire that plaintiff's condition meets Listing 12.04, Affective Disorder,

28

1    and 12.06, Anxiety-Related Disorders. *Id.* at 649. Thus, the ALJ erred by stating

2    that there was "no opinion" that plaintiff's mental impairments meet or equal a

3    listing. But, as discussed above, the court finds that the ALJ properly gave little

4    weight to Dr. Khashayar's opinion. Therefore, the ALJ's failure to recognize that

5    Dr. Khashayar found that plaintiff met a listing is harmless error.

6           Additionally, plaintiff has failed to demonstrate that he meets all of the

7    criteria of the relevant listed impairments. Although plaintiff was diagnosed as

8    having major depressive disorder and severe anxiety (AR at 649, 601), as

9    defendant correctly observes, "the mere diagnosis of a listed impairment does not

10   establish that the claimant 'meets'[a listed impairment]." D. Mem. at 6 n.4; *see* 20

11   C.F.R. § 404.1525(d); *Key v. Heckler*, 752 F.2d 1545, 1549-50 (9th Cir. 1985).

12   And as noted above, it is plaintiff's burden to establish that he meets each

13   characteristic of a listed impairment relevant to his claim. *See Tackett*, 180 F.3d at

14   1099; *Young*, 911 F.2d at 183-84 (9th Cir. 1990). Plaintiff has failed to fulfill this

15   burden here. Plaintiff relies solely on the fact that his treating physician

16   determined that he met a listing and offers no independent evidence that he meets

17   each characteristic of Listing 12.04 (Affective Disorder) and 12.06 (Anxiety-

18   Related Disorders). Since the ALJ properly gave little weight to the treating

19   physician, this is insufficient. As such, the ALJ's determination that plaintiff does

20   not have an impairment that meets or equals the severity of a listed impairment

21   properly stands.

22   **D.   The ALJ Properly Rejected the Statements of Plaintiff's Sister**

23          Plaintiff contends that the ALJ erred in rejecting the lay testimony of his

24   sister, Ana Fierros. Pl. Mem. At 10-11. The court agrees that many of the reasons

25   given by the ALJ for giving "limited weight" to Ms. Fierros's testimony were

26   improper. But the court finds that the ALJ properly discounted Ms. Fierros's

27   statements on the ground that her statements were not consistent with medical

28

16

opinions and other evidence.  *See* AR at 25.

Plaintiff's sister, Ana Fierros, completed a Third Party Function Report on January 23, 2009.  *Id.* at 312-19.  Ms. Fierros stated that plaintiff generally spends his time alone in his room because when he is around people he is paranoid, fears he is being followed, and often has panic attacks.  *Id.* at 312, 314-16, 318.  She noted that he needs reminders and encouragement to eat, take out the trash, and go to school, and that he requires help paying bills and scheduling doctors appointments.  *Id.* at 314-15, 317, 319.  According to Ms. Fierros, plaintiff does not handle stress well, getting frustrated and "kind of jittery and cr[ies] at times if it's too stressful."  *Id.* at 318.  He is often "in a different zone . . . spacing out."  *Id.* at 319.

The ALJ rejected Ms. Fierros's testimony because: (1) her statements do not establish plaintiff is disabled as she is not medically trained, and thus the accuracy of her statements is questionable; (2) she can only report her observations, which might not be reflective of plaintiff's maximum capabilities; (3) by virtue of her relationship with plaintiff, she "cannot be considered a disinterested third party whose statements would not tend to be colored by affection for him and a natural tendency to agree with the symptoms and limitations he alleges"; and (4) "[m]ost importantly," her statements "are not fully consistent with the medical opinions and other evidence" in the record.  *Id.* at 25.

"[L]ay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without comment."  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal quotation marks, ellipses, and citation omitted); *see Smolen*, 80 F.3d at 1288; *see also* 20 C.F.R. § 404.1513(d)(4) (explaining that Commissioner will consider evidence from "non-medical sources," including "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy," in

1  determining how a claimant's impairments affect his or her ability to work); 20
2  C.F.R. § 416.913(d)(4) (same).  The ALJ may only discount the testimony of lay
3  witnesses by providing specific "reasons that are germane to each witness."
4  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1983); *accord Lewis v. Apfel*, 236
5  F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is
6  competent evidence that an ALJ must take into account, unless he or she expressly
7  determines to disregard such testimony and gives reasons germane to each witness
8  for doing so.").  A lay witness is "not disqualified from rendering an opinion" on
9  how a plaintiff's condition affects his or her ability to work simply because that
10 witness is not a vocational or medical expert.  *Bruce v. Astrue*, 557 F.3d 1113,
11 1116 (9th Cir. 2009).

12         The ALJ's first reason – Ms. Fierros is not a medical professional – was not
13 germane to Ms. Fierros.  Although, an ALJ may reject lay testimony if it conflicts
14 with medical evidence, he may not discount lay testimony solely on the basis that
15 it is lay testimony.  *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)
16 (explaining that an ALJ is required to consider the testimony of a lay witness); *see*
17 *also Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  Similarly, the ALJ's
18 rejection of Ms. Fierros's testimony on the ground that Ms. Fierros can only
19 comment on what she personally observes, which may not accurately depict
20 plaintiff's maximum capabilities, does not undermine her credibility.  Indeed, "the
21 testimony of those who see the claimant less often still carries some weight."
22 *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

23         In addition, the ALJ's rejection of Ms. Fierros's testimony on the ground
24 that, as plaintiff's sister, she was not a "disinterested" party "amoutn[s] to a
25 wholesale dismissal of the testimony of all [lay] witnesses as a group and therefore
26 does not qualify as a reason germane to" Ms. Fierros.  *Smolen*, 80 F.3d at 1289;
27 *see Dodrill*, 12 F.3d at 919 ("friends and family members in a position to observe
28

a claimant's symptoms and daily activities are competent to testify"); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("regardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her conditions." (internal quotations and citation omitted)); *Sprague,* 812 F.2d at 1232 ("Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence.").

But the reason the ALJ characterized as the most important reason for discounting Ms. Fierros's statements was proper.  The ALJ's rejection of Ms. Fierros's statements because they were similar to plaintiff's own subjective complaints, and thus similarly inconsistent with the record (AR at 25), was specific and germane to Ms. Fierros.[7]  *See Valentine*, 574 F.3d at 694 (finding ALJ's rejection of lay witness testimony, based in part of the same reasons for discounting the plaintiff's own allegations, constituted "germane reasons" for rejecting lay witness's testimony); *see Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Lewis*, 236 F.3d at 511) (inconsistency with medical evidence is a germane reason for discrediting the testimony of lay witnesses).

Additionally, the Ninth Circuit has upheld an ALJ's findings where "the ALJ at least noted arguably germane reasons for dismissing the family members' testimony, even if he did not clearly link his determination to those reasons." *Lewis*, 236 F.3d at 512.  For example, even though the ALJ in *Lewis* did not clearly link each reason he gave to his dismissal of the family members' testimony, he did at least generally specify his reasons.  *Id.*  Consequently, the Ninth Circuit

---

[7]   The ALJ concluded that plaintiff's allegations were not credible to the extent they were inconsistent with the RFC finding.  AR at 22-23.  Plaintiff does not challenge this finding.

noted that the ALJ "expressly disregarded the family members' testimony" where he stated:

> "I have carefully considered the testimony of the claimant and the family members in which they indicated that the claimant has been 'constantly' groggy and fatigued since 1989. However, the documented medical history and findings and prior recorded statements are contrary to the testimony."

*Id.* at 511. Similarly, here, the ALJ stated that Ms. Fierros's statements, like plaintiff's, "are not fully consistent with the medical opinions and other evidence discussed herein." AR at 25. Thus, here, like in *Lewis*, there is no question that the ALJ discounted the lay testimony based on contrary medical evidence. *See also Thebo v. Astrue*, 436 Fed. Appx. 774, 776 (9th Cir. 2011) (upholding ALJ findings where "the ALJ did not 'clearly link' his rejection of the lay testimony to conflicts between the lay testimony and the medical evidence," but where ALJ apparently juxtaposed his rejection of the lay testimony with his germane reasons for rejecting it, as the ALJ "noted that 'both [statements by family members] were considered in arriving at the residual functional capacity' and that '[c]onsideration [was] given to the medical opinions and lay reporting'").

Accordingly, the ALJ properly rejected Ms. Fierros's lay witness testimony.

**E.     The ALJ's RFC and Step Five Determination Are Supported by Substantial Evidence**

Plaintiff contends the ALJ's RFC and step five findings are not supported by substantial evidence because the ALJ failed to account for all of plaintiff's impairments and limitations in formulating the RFC. Pl. Mem. at 11-12. Specifically, plaintiff claims the ALJ failed to explain the basis for finding plaintiff is able to work under occasional supervision and occasionally interact

1   with co-workers.[8] *Id.* The court disagrees, for the reasons discussed below.

2         **1.    RFC Determination**

3         As previously noted, a claimant's RFC is what he can still do despite his

4   physical, mental, nonexertional, and other limitations. *Cooper*, 880 F.2d at 1155-

5   56 n.5-7; *see also Valentine*, 574 F.3d at 689 (RFC is "a summary of what the

6   claimant is capable of doing (for example, how much weight he can lift)"). In

7   conducting an RFC assessment, the ALJ must consider the combined effects of an

8   applicant's medically determinable impairments on the applicant's ability to

9   perform sustainable work. 42 U.S.C. § 423(d)(2)(B); *Macri v. Chater*, 93 F.3d

10   540, 545 (9th Cir. 1996). The ALJ must consider all of the relevant medical

11   opinions as well as the combined effects of all of the plaintiff's impairments, even

12   those that are not "severe." 20 C.F.R. §§ 404.1545(a); 416.945(a); *Celaya v.*

13   *Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003). "[A]n RFC that fails to take into

14   account a claimant's limitations is defective." *Valentine*, 574 F.3d at 690. The

15   ALJ must determine a claimant's limitations on the basis of "all relevant evidence

16   in the record." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

17         Here, with respect to plaintiff's mental limitations, the ALJ's determined

18

19   ————————————————

20      [8] Plaintiff's argument focuses on the ALJ's failure to explain why he

21   concluded that plaintiff could work with occasional supervision and have
occasional interactions with co-workers. *See* Pl. Mem. at 11-12. But in his Reply

22   Brief, plaintiff points to issues with punctuality, adapting to work demands, and

23   cites Dr. Gamboa's opinion that plaintiff's ability to keep a job is affected by his
mental impairment. *Id.* at 3 (citing AR at 604). Because these arguments were not

24   raised in the first instance in plaintiff's Memorandum, they are waived. *See*

25   *U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is
improper for a moving party to introduce new facts or different legal arguments in

26   the reply brief than those presented in the moving papers.").

27

28

that plaintiff retained the RFC to do medium work as defined in 20 C.F.R.

§§ 404.1567(c) and 416.967(c), except that he limited plaintiff to simple, routine,

repetitive work that does not involve directing others or abstract thought and

planning, that involves only simple work-related decisions and routine workplace

changes, and that is performed under occasional supervision with no direct

interaction with the public, only occasional interaction with co-workers, and no

tandem tasks.  AR at 22.  In coming to this conclusion, the ALJ discussed

plaintiff's activities and cited plaintiff's own testimony, both of which support the

RFC.  *Id.* at 23-24.  For example, the ALJ cited plaintiff's Function Report,

completed on January 21, 2009, wherein plaintiff indicates that he takes public

transportation, visits relatives regularly, has no problem getting along with

"family, friends, neighbors, or others," and gets along well with authority figures.

*Id.* at 24, 308-10.  This information is inconsistent with plaintiff's claim that he

should be limited to "less than occasional contact" with others.  *See* Pl. Mem. at

12.

Plaintiff contends that to the extent the ALJ's RFC allows plaintiff to

occasionally interact with supervisors and co-workers, it is inconsistent with Dr.

Gamboa's opinion that plaintiff would show moderate to marked inability to

interact appropriately with supervisors, coworkers, and peers, and Dr. Khashayar's

note that plaintiff has no friends.  Pl. Mem. at 11.  But neither Dr. Gamboa nor Dr.

Khashayar concluded that plaintiff was precluded from *any* interaction with

others.  If this were the case, Dr. Gamboa most likely would have found that

plaintiff has "extreme" limitations interacting with others, as opposed to the

"moderate to marked" finding he made.[9]  The ALJ's RFC takes account of both

_____

[9]  "Moderate" limitation indicates "more than a slight limitation . . . but the
individual is still able to function satisfactorily."  AR at 603.  "Marked" limitation
indicates "there is serious limitation . . there is substantial loss in the ability to

Dr. Gamboa's findings and plaintiff's own testimony of his social interactions as demonstrated by the limitation included in the RFC that plaintiff should have "no direct interaction with the public and only occasional interaction with co-workers." *See* AR at 22.

Finally, to the extent plaintiff claims that the RFC fails to account for his subjective symptom allegations (Pl. Mem. at 12), plaintiff's argument is without merit. First, the ALJ found plaintiff's testimony not credible to the extent it was inconsistent with the RFC (AR at 22-23) and plaintiff does not challenge the ALJ's credibility determination. Second, the ALJ explicitly addressed the testimony that plaintiff alleges was not considered. Plaintiff asserts that the ALJ ignored his testimony that he has uncontrollable panic attacks, anxiety and depression. Pl. Mem. at 12 (citing AR at 47-48, 50). But the ALJ properly noted that plaintiff also testified that the medication he was prescribed helps his symptoms. AR at 23 (citing *id.* at 48). Plaintiff also points to his testimony that he could not complete a school class that involved group interaction. Pl. Mem. at 12 (citing AR at 54-55). The ALJ's RFC takes consideration of this by including the limitation that plaintiff cannot engage in "tandem tasks." *See* AR at 22.

In sum, the ALJ's assessed RFC properly accounts for plaintiff's mental impairments and limitations.

### 2.   Step Five Analysis

Hypothetical questions posed to a vocational expert ("VE") must consider all of the claimant's limitations (*Bray v. Astrue*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas v. Barnhart*, 278 F.3d 278, 956 (9th Cir. 2002)), and "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. Here, the ALJ's hypothetical

effective function." *Id.* "Extreme" limitation indicates "there is no useful ability to function in this area." *Id.*

posed to the VE included all of the mental impairments included in the RFC. *See* AR at 58. The ALJ asked the VE whether jobs exist in the national economy for an individual with plaintiff's age, education, work experience, and RFC, including the limitation that plaintiff "would work under only occasional supervision with no direct interaction with the public, only occasional interaction with coworkers, but with no tandem tasks." *Id.* In response, the VE testified that such an individual would be able to perform the requirements of the following jobs, as described in the Dictionary of Occupational Titles ("DOT"): Rack Loader (DOT 590.684-018), Night Cleaner (DOT 381-687-018), and Machine Feeder (DOT 699.686-010). *Id.* at 26.

Plaintiff contends that had the ALJ incorporated the proper functional limitations into his questions posed to the VE, namely that he can only interact with others on a "less than occasional basis," he would be considered disabled at step five. Pl. Mem. at 12. But, as discussed above, the ALJ properly determined that plaintiff's RFC included the limitation that plaintiff could work under occasional supervision and occasionally with co-workers. Thus, the hypothetical posed to the VE was proper and the ALJ was not required to include limitations in the hypothetical that would be more restrictive than those included in the RFC.

For these reasons, plaintiff's claims of error in the ALJ's RFC and step five determinations lack merit.

## V.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: April 29, 2014

SHERI PYM
United States Magistrate Judge

24